Argued and submitted June 2, affirmed December 13, 1989

In the Matter of:

LANGLEY,
*Appellant,*
*and*

LOGAN,
*Respondent.*

(87-0046-NJ-3; CA A50712)

783 P2d 1017

Richard W. Courtright, Medford, argued the cause and filed the brief for appellant.

Laurance W. Parker, Medford, argued the cause for respondent. On the brief were Thad M. Guyer, and Center for Nonprofit Legal Services, Inc., Medford.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

This case involves the determination of child custody between parents who have never married. Father asserts that the trial court erred in awarding custody of the child to mother.[1] On *de novo* review, we affirm.

The parties met in 1976 or 1977 in Oregon and shortly thereafter moved to Seattle, where they lived together. During their relationship, they were heavily involved in substance abuse of alcohol, methamphetamine, cocaine and marijuana. Their son was born on November 4, 1984. Three months later mother took the child and left father, because he physically abused her. Father admits that he had hit mother, but he contends that she too was a violent person when she was intoxicated.

In 1985, mother entered an alcohol rehabilitation program and left the child with father and a girl friend with whom he was living. After mother completed the program, she took the child back and they moved to Klamath Falls in late 1985, where they lived with mother's sister. Later, mother and child moved in with mother's father in Medford, where they lived until December, 1986. Mother acknowledges that, during that time, she continued to abuse alcohol and drugs.

In December, 1986, father was contacted by an acquaintance of mother who was of the opinion that, because of mother's substance abuse, the child was being neglected. Father complained to the Children's Services Division in Medford, which investigated the situation but found no evidence of abuse and took no further action. Father subsequently went to Medford and took the child without mother's permission. Mother continued to maintain contact with her son and made periodic trips to Seattle to visit him.

In October, 1987, mother entered another, more extensive, drug and alcohol treatment program, which she

---

[1] On January 8, 1987, the court granted father temporary custody during this proceeding. Before that, there was no custody order. On February 24, 1988, the parties stipulated that father have temporary custody until August 10, 1987; that was later extended to April 4, 1988. On April 6, 1988, the court granted father temporary custody until final determination of this case, but on November 23, 1988, the court granted mother custody. Father's motion for stay of the award of custody pending appeal was denied.

successfully completed. She then lived at a recovery "half-way house" for three months. She testified that, at the time of trial, in November, 1988, she had been drug and alcohol free for over a year. After father had taken the child to Seattle, mother would go there to visit him and, between visits, would telephone and send letters. She moved to Seattle in September, 1988, and has since been employed at a restaurant. She continued to maintain contact with the child and visited him frequently.

Father has reformed his life, too. In January, 1987, he married Paulson, his girl friend, and they had a son. Father has been employed as a mechanic since 1984, and Paulson is employed as an insurance underwriter. Father testified that he has never sought treatment for his substance abuse problem, but that he has not used drugs since February, 1985, although he does continue to drink alcohol in moderation. Paulson testified that father has never abused her or his children. Father testified that, in his opinion, the child involved here was happy and well adjusted in father's home and got along well with his stepmother and stepbrother.

Father contends that the trial court erred, because it failed to give primary consideration to the best interests and welfare of the child in awarding custody to the mother. The trial court explained its decision:

> "I will explain to you my reasons for my decision. I think the parties are entitled to that. This is one of those cases where observing the manner in which the witnesses testify is much more telling than believing your spoken words. * * * Both of the parties love and care for this child, and when that's the case and the child would thrive perhaps equally with both parties, then you look for other indicia, other factors to assist in making a very important decision of this kind. * * * I believe the mother is the more human, the more nurturing, I'm going to award the care, custody and control of the child to her, subject to reasonable visitation rights in favor of the father."

ORS 107.137 provides that, in determining custody of a minor child, the court must give primary consideration to the best interests and welfare of the child.[2] In doing so, the

---

[2] ORS 109.103 makes the provisions of ORS 107.137 applicable to proceedings to determine the custody of children born out of wedlock.

court may consider:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship; and

"(d)   The abuse of one parent by the other." ORS 107.137(1).

The court is to consider all of those factors, however, and not rely exclusively on one. ORS 107.137(2).

Here, the child has emotional ties to his mother, father, and stepfamily. The mere fact that there are more family members on father's side, however, does not make this factor weigh more heavily for father. The third and fourth factors do not weigh more heavily for either party. It is apparent that the child loves both parents and that they reciprocate his love. A continuing relationship with both parents is appropriate. Although there is evidence that the parties did abuse each other in the past, there is no evidence of recent abusive behavior.

The last factor considered is the parents' relative interest in and attitude toward the child. The record demonstrates that both mother and father show a strong interest in him. Assessing their attitude toward him, however, is not easy, especially when there is no opportunity to observe their demeanor and make sensitive judgments about their more intangible qualities. Our assessment of the record is that mother has shown more insight and sensitivity toward meeting the child's needs. This assessment is also supported by the trial court's observations. After observing both mother and father, the trial court found that mother was more nurturing in her attitude toward the child and was persuaded by that finding. This is a case where the trial court's ability to observe the demeanor of the parents is a critical factor in giving preference to one parent or the other. *See, e.g., Patterson and Patterson,* 39 Or App 423, 428, 592 P2d 576, *rem'd on other grounds,* 286 Or 631, 596 P2d 554 (1979).

We find that it is in the best interests of the child to

be with the mother and, accordingly, we affirm the trial court's award of custody.

Affirmed.